Filed 12/23/20
See Concurring Opinion

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072782 |
| v. | (Super.Ct.No. RIF75184) |
| ESTEBAN ZARATE BRAVO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Law Offices of Paul C. Supple, and Paul C. Supple, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Natasha Cortina and Melissa A. Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

On June 24, 1997, defendant Estaban Zarate Bravo pleaded guilty to and was convicted on a plea bargain agreement of: a felony violation of domestic violence (Pen. Code,[1] §273.5, subd. (a); count 1) and felony violation of child cruelty (§ 273a, subd. (a); count 2). The trial court sentenced defendant to two years' incarceration, suspended, and placed him on formal probation for 36 months on terms and conditions including 25 days' custody, for which he was granted time served.

On December 11, 2018, defendant filed a motion to vacate the judgment pursuant to sections 1016.5 and 1473.7. On March 19, 2019, the trial court denied the motion. Here, defendant contends that this court should grant the motion to vacate or, alternatively, remand to and direct the trial court to grant the motion.

# II

## FACTUAL BACKGROUND

The record does not contain the facts underlying defendant's pleas and convictions. This background will focus on what procedural facts can be gleaned from the record surrounding defendant's claim that he was inadequately admonished as to the immigration consequences of his guilty plea during the plea bargain process, such that his plea agreement was not entered into willingly, intelligently, and voluntarily, to justify vacating the judgment.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

The felony complaint alleged that as to count 1, on June 7, 1997, defendant violated section 273.5, subdivision (a), by willfully and unlawfully inflicting a corporal injury resulting in a traumatic condition upon Lucy D., who was defendant's spouse; and, as to count 2, also on June 7, 1997, defendant violated section 273a, subdivision (a), by willfully and unlawfully, under circumstances and conditions likely to produce great bodily harm and death, cause and permit an infant, Esteban Jr., to suffer, and inflicted unjustifiable physical pain and mental suffering, and did willfully cause and permit the person and health of said infant to be injured.

Defendant is a native of Mexico and Spanish is his first language. He appeared in custody at a hearing on June 24, 1997, at which he pleaded guilty to both counts with the use of an interpreter. He was admonished as to his rights, and initialed acknowledgment on a form provided therefor.[2] These rights included the right to a speedy trial; to face and cross-examine witnesses; to ask the court to compel witnesses to attend trial; against self-incrimination; and to be represented by a lawyer. He then initialed the statement that "*I understand that when I enter a plea of guilty, I waive, or give up each of the rights as stated above*."

Immediately following that recitation and waiver, the form enumerates the "Consequences of Plea," stating, "*In addition to the consequences discussed in open court, and on page two of this form*, I am further aware that my guilty plea to a felony

---

[2] A so-called *Tahl* form, reflecting the constitutional advisements under *In re Tahl* (1969) 1 Cal.3d 122, disavowed on other grounds in *Mills v. Municipal Court* (1973) 10 Cal.3d 288 and *Boykin v. Alabama* (1969) 395 U.S. 238.

3

will have the following consequences:" followed by six specific statements of consequences including firearm ownership, restitution fines, and others. The sixth such consequence states, "If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." The form was signed by the defendant, defense counsel David Ross, and interpreter Elias Uribe. The plea agreement specified that the custody term would be two years suspended, with a restitution fine of not more than $200, and that a total of 25 days' credit for time served was computed. Defendant also initialed a block stating, "I have had an adequate time to discuss my case with my attorney, including time to discuss (1) my constitutional rights, (2) the consequences of any guilty plea, and (3) any defenses I may have to the charges against me." Defendant's defense counsel, David Ross, also signed the form under the block stating, "I am satisfied that (1) the defendant understands his/her constitutional rights and understands that a guilty plea would be a waiver of these rights; (2) that the defendant has had an adequate opportunity to discuss his/her case with me, including any defenses he/she may have to the charges; (3) that the defendant understands the consequences of the his/her [*sic*] guilty plea."

The immediate advantage of his plea was that defendant was to be released from custody that same day so that he could return to his construction job without being fired and could therefore support his spouse and their child.[3] Of more immediate importance,

---

[3] He refers to his spouse as his girlfriend; it is unclear from this record when or if the marital status changed.

defendant was informed by counsel and the prosecution that Immigration and Customs Enforcement (ICE) would conduct a sweep of the county jail where he was being held by the next morning; being released that afternoon allowed him to avoid the ICE sweep and likely deportation.

Defendant now contends that at the time he executed the plea agreement, pleading guilty to sections 273.5, subdivision (a), and 273a, subdivision (a), he was unaware of future immigration consequences of his plea. Specifically, he asserts that he recently consulted with an immigration attorney (not appellate counsel appearing here) for advice as to his intent to renew an application for lawful permanent status, for which he contends he is otherwise eligible through his wife who is a U.S. citizen; he also contends his convictions resulting from his guilty pleas will result in certain denial of his intended citizenship application. Finally, he contends that he was never informed that he could be deported at any time after entering these pleas. In that light, he claims by declaration he was never admonished about these immigration consequences pursuant to the requirements of section 1016.5.

At the time he prepared his declaration, which he executed on November 19, 2018, he was under the belief that no copy of the plea agreement existed. The trial court found a copy in its files and provided notice and copies of the agreement to the parties, which is the source of the terms quoted above. Defendant, by counsel, then acknowledged that the admonishment had been given and that he had initialed and signed the appropriate blocks on the plea bargain form:

5

"[Defense Counsel]: [¶] . . .[¶] At the time that Mr. Bravo took the plea, it's our position that he entered the plea but he failed to understand the consequences or knowingly understand that the immigration consequences of a guilty plea would result in him not being able to adjust his status to a permanent resident at the time as it is today. [¶] He does recall, as I reviewed the plea form with Mr. Bravo outside in the hall, receiving that immigration admonishment. However, it is clear he—

"[The Court]: The one he claims he didn't receive in his declaration?

"[Defense Counsel]: Right. He—he now recalls it as I showed it to him that those are his initials. He doesn't really remember seeing it, but he did say that those were his initials.

"[The Court]: Also have his signature, which is the same one on the current declaration.

"[Defense Counsel]: Well, the main issue is that that may prevent us from going forward with a 1016.5 motion. However, it will still allow us to go forward on the 1473.3 motion. And with that one, our contention again is that he did not fully understand the consequences as he pled. [¶] And I will submit based on that, Your Honor, that it is not—it was not that Mr. Bravo was not given the proper admonishment, that it was going to reflect a harsh consequence to his immigration status and that's what's affected him right now."

Defendant further contends that had he known these consequences, he would not have executed the plea agreement but would have relied on his defenses and gone to trial.

6

He believes the prosecution's case was weak based on his then girlfriend's statement to the court at his arraignment that he had not "touch[ed], hurt or do[ne] any of the things to her or our son that I was accused of." Further, he claims that the police reports with witness statements prepared by the police "contained factual allegations that were wrong."

## III

## DISCUSSION

### A. Standard of Review

To the extent that a defendant seeks review of the denial of a motion to vacate a plea based on violation of a constitutional right, such as ineffective assistance of counsel under the Sixth Amendment, such a violation would implicate a mixed question of law and fact and therefore we would independently review the denial. (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116; see *People v. Vivar* (2019) 43 Cal.App.5th 216, 224, review granted Mar. 25, 2020, S260270.[4]) Here, however, defendant explicitly eschews any claim of ineffective assistance of counsel. Although he relies on *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76, to argue an independent review or de novo standard of review, *Ogunmowo* addresses a mixed question of law and fact based on a claim of ineffective assistance of counsel that is absent here. Instead, defendant specifically relies simply on the statutory language of sections 1016.5 and 1473.7. Accordingly, "[t]o the extent the motion asserts statutory error or a deprivation of

---

[4] Cited here pursuant to California Rules of Court rules 8.1105(e)(1)(B) and 8.1115(e)(1).

statutory rights, the denial is reviewed for an abuse of discretion." (*People v. Rodriguez* (2019) 38 Cal.App.5th 971, 977 [pertaining to section 1473.7].) The same is true of motions under section 1016.5. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192.) We therefore review the superior court's denial of the motion to vacate for abuse of discretion.

B. Defendant's Claim

Defendant contends that his guilty pleas were not voluntary, knowing nor intelligent and that this court should grant his motion to vacate judgment pursuant to sections 1016.5 and/or 1473.7, or, alternatively, remand directing the trial court to grant the motion. In so doing, he resurrects his section 1016.5 claim, regardless his recognition during the hearing in the trial court that the acknowledged admonitions contained in the plea bargain agreement would eliminate those arguments.

At issue is whether, at his plea hearing on June 24, 1997, he was adequately advised of the immigration consequences of his plea of guilty to the charges of spousal abuse and child abuse. Because a claim such as defendant's may be brought without invoking ineffective assistance of counsel, he is not limited to having to prove prejudice under the *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*) standard, which requires a showing that counsel's representation fell below an objective standard of reasonableness (*id*. at p. 688) and demonstrate prejudice with a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," meaning "a probability sufficient to undermine

8

confidence in the outcome." (*Id.* at p. 694.) He may instead "show prejudice by 'convinc[ing] the court [that he] would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow.' [Citations.]" (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1010 (*Camacho*).) This prejudice analysis applies equally to claims under section 1473.7 as to claims under section 1016.5. (*Ibid.*)

Whether based on one or both Penal Code sections, we find defendant's claim to be without merit and affirm the trial court.

C. The Trial Court's Rulings

As to defendant's argument under section 1016.5, "(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).)

The trial court, ruling on defendant's motion to vacate, found that, "The 1016.5 does fail. [¶] It's clear in the written advisement that Mr. Bravo initialed next to the applicable portions and signed the document, and the court minutes, which are attached to each of Mr. Bravo's motions as well as part of the court file, indicate that at the time Judge Thierbach took the plea, he found that he understood the constitutional rights, the

9

nature of the charges, and consequences of the plea when Mr. Bravo entered his guilty pleas to Count 1 and 2.[5] [¶] So the 1016.5 fails."

As to defendant's argument under section 1473.7, "(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for either of the following reasons: [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel. [¶] (2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." (§ 1473.7, subd. (a).)

In this case, the trial court addressed both prongs of section 1473.7, subdivision (a): "On the 1473.7, there were two issues raised. One was the issue of alleged factual innocence, which after reading everything I don't see any credible evidence to support. So on that basis, it's denied. [¶] Additionally, once again he was properly advised of the immigration consequences. He initials the section which does state he understands that he has understood each of the above consequences after reading them. And I have to take him at his word that he read and understood all of the consequences of his plea. [¶] So his 1473.7 is also denied."

---

**5** The trial court is referring to the findings recorded in the court minutes at the June 24, 1997 hearing: "Crt finds plea is free & voluntary. Crt finds deft knows & understands constitutional rights, nature of charges & consequences of his/her plea."

D. Analysis

Notwithstanding the trial court's findings, defendant again argues that his guilty plea was not voluntary, knowing, and intelligent because he failed to understand the immigration consequences, citing *People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 798 ["When, as here, the accused entered his plea of guilty without knowledge of or reason to suspect severe collateral consequences, the court could properly conclude that justice required the withdrawal of the plea on motion therefor. [Citation.]"]. Yet, the advisement required under section 1016.5, subdivision (a), *supra*, is satisfied by the admonition on defendant's plea bargain form: "If I am not a citizen of the United States, I understand that this conviction may[6] have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." He explicitly acknowledged that he understood the specific immigration consequences complained of here: that he would be subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. In fact, defendant, by counsel, indicated he agreed he had been so admonished at the June 24, 1997 plea bargain hearing.

---

**6** We recognize "that the words 'may have' in a section 1016.5 immigration advisement are not an adequate immigration advisement" for defendants with serious offenses mandating deportation or other severe immigration consequences. (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1065 (*Ruiz*).) In such cases, "[d]efendants must be advised that they *will be* deported, excluded, and denied naturalization as a *mandatory* consequence of the conviction." (*Ibid*.) As we discuss below, however, defendant has not met the standard to support a claim that he was not so advised.

11

Defendant, however, argues that he "declared that his attorney communicated to him that the best way to avoid immigration consequences was to sign the plea he negotiated whereby the prosecution would arrange that he be released later on the same day, so that he will avoid the ICE agents when they arrive[d] at the Riverside County Jail to conduct a sweep the following morning. His attorney's communication, coupled with the written admonition on the plea at [Appellate Record (Clerk's Transcript) at p. 8: ¶ 6] as read to him by the interpreter would leave any reasonable person to believe that so long as he avoids the ICE agents while incarcerated, [defendant] will not confront immigration consequences."

Defendant's only declaration in this record is the one he executed for his motion to vacate in superior court. There, however, defendant stated in absolute terms, "The Court and the Prosecution did not convey to me any immigration consequences attached to this plea. I was not admonished about the immigration consequences pursuant to PC § 1016.5." As related above, however, the trial court hearing the motion to vacate found and delivered copies of the advisement and plea agreement to the parties at the motion hearing. On seeing his initials, defendant reversed his declaration attestation and admitted he had been admonished on these very immigration consequences pursuant to section 1016.5. The court hearing the motion to vacate clearly observed that defendant had initialed and signed the admonitions and plea bargain, including the paragraph derived from section 1016.5, subdivision (a), despite defendant's sworn declaration to the contrary, and that the court's minutes from the 1997 plea hearing had found a knowing,

12

voluntary, and intelligent plea. Based on that, the court's finding that defendant had, in fact, "understood the constitutional rights, the nature of the charges, and consequences of the plea . . . " meant that the trial court reviewing the motion to vacate found defendant's declaration not credible.

Much of defendant's focus is on his section 1016.5 argument, but of course the section 1473.7 argument must be examined closely, especially after the Legislature clarified that statute, effective January 1, 2019. This came via Assembly Bill No. 2867 "to 'provide clarification to the courts regarding Section 1473.7' to 'ensure uniformity throughout the state and efficiency in the statute's implementation.' (Assem. Bill No. 2867 (2017-2018 Reg. Sess.) ch. 825, § 1(b).) It intended to change the law to give defendants a *new right* to prevail using an easier new standard to retroactively challenge invalid prior convictions. (*People v. Camacho*, *supra*, 32 Cal.App.5th at pp. 1007, 1009 . . . .)" (*Ruiz*, *supra*, 49 Cal.App.5th at p. 1067.) That standard removed the presumptive finding of error by ineffective assistance of counsel analysis (the *Strickland* analysis, *supra*), and replaced it with a requirement "only to show that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea . . . .' (§ 1473.7, subd. (a)(1).)" (*Camacho*, at p. 1009.) Prejudice would then be shown by " 'convinc[ing] the court [that he] would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow.' " (*Id*. at p. 1010 [applying prejudice standard to

13

§ 1473.7 analysis as well as § 1016.5].)  Here, it should be noted that defendant originally brought his section 1473.7 motion in 2018, before the effective clarification; but, the trial court did not hear and rule on it until March 19, 2019.  " ' " 'An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute . . . .' " ' " (*Camacho*, at p. 1007.)  We therefore apply the clarified meaning of the post-January 1, 2019 version of section 1473.7 to defendant's section 1473.7 claim brought in 2018.

However, it remains unclear whether *Ruiz* and other recent cases should be applied retroactively to plea bargain cases, like this one, that go back decades.  *Ruiz* based its analysis in part on (*People v. Patterson* (2017) 2 Cal.5th 885 (*Patterson*).)  *Patterson*, in turn, relied on the United States Supreme Court's decision in *Padilla v. Kentucky* (2010) 559 U.S. 356.  As Justice Yegan observed in his dissent in *Ruiz,* "No California Supreme Court case says that *Patterson* is retroactive, but the rule articulated in *Padilla*, is not retroactive.  (*Chaidez v. United States* (2013) 568 U.S. 342, 358.)  So, why should *Patterson* be retroactive?  I am ever faithful to the rule of *Auto Equity Sales*, *Inc. vs. Superior Court* (1962) 57 Cal.2d 450, 455, but *Patterson* does not resolve or even mention retroactivity.  It declares a new procedural rule and I would not apply it retroactively."  (*Ruiz, supra*, 49 Cal.App.5th at pp. 1070-1071 [Yegan, J., dis. opn.].)  We would further observe that *Patterson* is not even a section 1473.7 case.  Although the case was decided after the enactment of the original version of section 1473.7, the

14

defendant in *Patterson*, a Canadian citizen, sought to withdraw his guilty plea to a drug possession charge subjecting him to deportation, under section 1018 on grounds of mistake or ignorance.  (*Patterson*, at p. 889.)  However, we need not decide retroactive application as framed by Justice Yegan because, as will become clear shortly, defendant here has not met the standard for supporting his claim that he was not adequately advised of the immigration consequences of his guilty plea and that he would not have taken the plea if he had known of eventually being deported and barred from lawful permanent status.

Defendant's declaration contains the only direct evidence presented as to whether he would have taken the plea in 1997 had he been aware of the immigration consequences he claims counsel never gave him.  However, "a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence."  (*In re Alvernaz* (1992) 2 Cal.4th 924, 938; see *In re Hernandez* (2019) 33 Cal.App.5th 530, 547 (*Hernandez*) [" '[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges *should instead look* to contemporaneous evidence to substantiate a defendant's expressed preferences.  [Citation.]' "]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 (*Mejia*) ["[i]n a postconviction setting, courts should not simply accept a defendant's statement of regret

15

regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.' [Citation.]"].)

Defendant points to no contemporaneous evidence in the record to independently corroborate the attestation in his declaration. (*Hernandez*, *supra*, 33 Cal.App.5th at p. 547.[7]) In fact, the sole contemporaneous evidence involved here is the plea bargain agreement and its advisement of rights, which the trial court produced after defendant declared that he had not been advised of the immigration consequences, that he raises here. His attestation that he had received no such admonition at all in his declaration was proven false by the presence of the plea bargain form and then by defendant's admission he had been so admonished.

Defendant could have provided contemporaneous evidence to support his claim that he had not been understandably admonished as to his immigration consequences. Such evidence could have included a declaration or testimony by his then defense counsel, David Ross, or the interpreter who signed the plea bargain form, Elias Uribe, or the hearing transcript from the June 24, 1997 hearing on his plea. He produced none of

---

[7] The reference to contemporaneous evidence in *Hernandez* is meant to corroborate a claim of prejudice under the Sixth Amendment standard for proving ineffective assistance of counsel, which is not raised here. Nonetheless, there is no reason not to look to contemporaneous evidence to corroborate defendant's declaration, seeking to show prejudice under the standards of the statutory, instead of constitutional, claims involved here.

16

these, nor offered any explanation for not doing so.[8] He did produce the minutes of the 1997 plea hearing, but minutes such as those do not capture the spoken details of the proceedings.

Defendant's declaration does contain statements to be considered in the context of contemporaneous evidence. Chief among these are his assertions of his family in the United States and his need to support them: "At the time of this conviction hearing, I was working full-time in construction and I was learning many new carpentry skills. I had a young family to take care of that included my one-year old son . . . , his mother, my live-in girlfriend and she was caring for them on a full-time basis. I was the sole financial provider in the household. All of them depended on my income and my job. If I returned to work within the same week of my plea, I would not lose my full-time job for abandonment and I could resume paying the bills. [¶] . . . Additionally, because my bills

_____

[8] In his opening brief, defendant briefly contends that the People or the trial court should have produced Mr. Ross and/or Mr. Uribe in order to rebut the putative presumption that he claims favored his declaration supporting his section 1016.5 motion to vacate, citing *People v. Arriaga* (2014) 58 Cal.4th 950 (*Arriaga*). The presumption discussed in *Arriaga* is based on language in section 1016.5, subdivision (b), stating, " 'Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement.' " (*Arriaga*, at p. 956.) That advisement, however, was limited to the language "that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States . . . ." (§ 1016, subd. (b).) Such advisement language is a part of the record here, in defendant's plea bargain agreement. Since the advisement, using the appropriate language, is present in the record, there is no presumption favoring defendant's declaration and, accordingly, no need for the People or the trial court to have produced Mr. Ross or Mr. Uribe. Instead, if defendant believed there would have been a benefit to him from either individual's testimony, he should have produced them himself.

17

were accruing, I was seeking release from jail to return to my full-time job to keep my family's housing and continue to support my live-in girlfriend and my infant son." Otherwise, defendant makes general statements, consistent with the discussion above, that neither counsel nor the interpreter advised him of the immigration consequences of his guilty plea and that he would not have taken the plea if he had known of eventually being deported and barred from lawful permanent status.

Aside from the trial court already finding the declaration not credible, these statements do not avail defendant. They simply emphasize that he elected to take the plea bargain to obtain release and return to his girlfriend and son and resume his job. There is nothing to substantiate his claim that had he known of the ultimate immigration consequences, he would have refused the plea bargain.[9] In fact, although the statements are in the declaration, counsel did not address them in either the motion to vacate in the trial court, nor in the March 19, 2019 hearing, nor did defendant testify. (*Mejia*, *supra*, 36 Cal.App.5th at pp. 864-865 [defendant testified at § 1473.7 motion hearing]; *Camacho*, *supra*, 32 Cal.App.5th at p. 1002 [same].)

To the extent that defendant now appears to address his family status in 1997 in his opening brief on appeal, he states that the ultimate immigration consequences "manifested at a time when he had a 1-year old son, his child's dependent mother as a live-in girlfriend and a promising career in carpentry. Had he known the true

---

[9] In fact, the People contend—both in their response and at oral argument here—that defendant's declaration statements were proof he would have taken the plea bargain to escape immediate deportation and to avoid being fired from his job, regardless of other future consequences. Defendant's declaration supports that interpretation.

18

immigration consequences, he would have made arrangements for the short-term care of his child and [his child's] mother, rather than risk the ability to care for them in the long-term and be denied the opportunity to raise his son or see him grow up." Yet, that argument by counsel is not supported in defendant's declaration, in which he made no such statement.[10] Moreover, to put the argument in context, it must be remembered that the events to which he pleaded guilty in 1997 were domestic violence felonies against that very girlfriend and son, undercutting any claim now that he would have put himself in immediate peril of deportation by a pending ICE sweep at the jail in order to go to trial

---

[10] In making this statement, counsel purports to show defendant's personal attachments to this country in support of his petition. Personal attachments to the United States, including family, may certainly be evidence of a defendant's desire to vacate an earlier plea based on a lack of understanding of immigration consequences and therefore having made a plea that was not entered into willingly, intelligently, and voluntarily. For example, in *Hernandez* the defendant had been brought from Mexico to the United States in 1988 at age three. At the time of her appeal in 2019, she had become a permanent lawful resident of the United States and had three minor children who were all citizens of the United States and for whom she was sole caretaker after the death of their father. The youngest child had serious medical problems, including epilepsy, requiring special medical care. She had virtually no family left in Mexico. (*Hernandez*, *supra*, 33 Cal.App.5th at p. 534.) These facts factored into the determination that she would not have pleaded guilty had she known it would lead to deportation by contemporaneous evidence. (*Id*. at pp. 547-548; see *Patterson*, *supra*, 2 Cal.5th at p. 899 ["These considerations, along with any others that bear on the defendant's state of mind at the time of the plea, may assist courts in evaluating a later claim that the defendant would not have entered the plea had he or she understood the plea would render the defendant deportable."].) Here, on the other hand, defendant came to the United States at age 18 and had only been in the country four and one-half years at the time of his guilty plea. As discussed above, defendant did not claim in his declaration that his relationship with his girlfriend and son would lead him to decline a plea if he had known the ultimate immigration consequences of the plea; his declaration makes clear he elected to plea and get out of jail immediately to return to support them and avoid ICE. Thus, counsel's argument in the opening brief is unsupported.

in an attempt to avoid later immigration consequences. There is simply no contemporaneous evidence to support such a claim or to obtain relief in this appeal.

Accordingly, we find that the trial court did not abuse its discretion in discrediting defendant's declaration, nor his current argument that he did not understand the admonitions, in the face of the sole contemporaneous evidence—his initials and signature on the plea forms—that he did understand.

Defendant also claims error in the trial court's analysis of his section 1473.7 claim as including an assertion of actual innocence. Defendant attested in his declaration that he had certain defenses at the time he entered his plea in 1997. Among these were his belief that the prosecution's case was weak based on his then girlfriend's statement to the court at defendant's arraignment that he had not touched, hurt, or done the things he was accused of to her or her son and that there were incorrect factual allegations in the police reports and witness statements the police prepared.

The trial judge stated, as quoted *supra*, that defendant raised two issues with regard to section 1473.7. First, that he was actually innocent of the charges, which the trial judge found unsupported by any evidence. Second, again, that defendant initialed and signed the plea agreement that he was informed of and understood the immigration consequences he contends are at issue here.

Defendant claims he never raised actual innocence, but simply articulated his defenses in his declaration to show that had he been aware of the immigration consequences, he would not have taken the offered plea agreement but would have relied

20

on his defenses at trial.  Accordingly, he contends, the trial court committed "reversible error."

Our review of the trial court's ruling is that it followed the language of section 1473.7 itself.  Subdivision (a) provides two reasons that a person no longer in custody who seeks his conviction vacated may obtain relief.  First, that the conviction or sentence is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."  Second, that "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice."  (§ 1473.7, subd. (a).)  The motion to vacate, coupled with defendant's declaration, suggests that the relief he sought was under the first prong, not the second; however, that is not wholly clear.  The trial court first addressed the statements in the declaration (and in the motion to vacate) regarding defendant's belief in having certain defenses and, as applied to a possible claim of actual innocence, found they were unsupported by evidence.  That is true; defendant offered no copies of the police reports, witness statements, transcript of the arraignment during which he contends his then girlfriend spoke in his behalf, or anything else.  Having disposed of that prong of section 1473.7, subdivision (a), the court then repeated its finding that defendant's assertion that he had never been advised as to the immigration consequences of his guilty plea was negated by his initialing and signing the advisement of rights and plea agreement that he was informed of *and understood*

21

those very immigration consequences.  The trial court stated, "And I have to take him at his word that he read and understood all of the consequences of his plea."  That is especially true in the face of no supporting evidence, contemporaneous or otherwise, besides his compromised declaration.  The trial court did not abuse its discretion in addressing the actual innocence prong of section 1473.7, subdivision (a).

Defendant's claims are without merit.

## IV

## DISPOSITION

The judgment of the trial court is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

I concur:


McKINSTER
J.

22

[*People v. Bravo*, E072782]

RAPHAEL, J., Concurring.

Defendant Esteban Zarate Bravo was not advised that a crime to which he pled guilty carried the consequence of mandatory deportation. Nevertheless, he has not demonstrated prejudice as needed to vacate that conviction under Penal Code section 1473.7.[1] The majority opinion therefore reaches the correct result, and I join the disposition. In my view, however, the majority's discussion obfuscates or is simply wrong about the section 1473.7 analysis in several respects, both in general and as applied to the record of this case. I therefore respectfully concur separately.

I

LEGAL BACKGROUND

Deportation is a mandatory consequence of a California guilty plea when the defendant pleads to a crime defined as an "aggravated felony" under federal immigration law. (See *Moncrieffe v. Holder* (2013) 569 U.S. 184, 187-188 (*Moncrieffe*); *Sessions v. Dimaya* (2018) 138 S. Ct. 1204, 1211 ["removal is a virtual certainty for an alien found to have an aggravated felony conviction, no matter how long he has previously resided here"]; 8 U.S.C. § 1228, subd. (c) [aggravated felon is "conclusively presumed"

---

[1] Further undesignated code section references are to the Penal Code.

1

deportable].)[2] Such a crime makes the defendant ineligible for certain types of discretionary relief from removal "no matter how compelling his case." (*Moncrieffe*, *supra*, 569 U.S. at p. 187.)  That means the defendant will be ineligible for relief such as asylum (available for those who face a well-founded fear of persecution) and cancellation of removal (available for those lawfully present in the United States for a number of years).  (*Ibid*.)  With an aggravated felony, a defendant faces expedited removal proceedings (8 U.S.C. §§ 1228(a)(3)(A)) with the federal courts barred from judicial review of the deportation order (*Arce Fuentes v. Lynch* (9th Cir. 2015) 788 F.3d 1177, 1180).  An aggravated felony also is an absolute bar to a finding of the good moral character necessary for naturalization.  (E.g., *Castiglia v. INS* (9th Cir. 1997) 108 F.3d 1101, 1103.)

Those consequences follow a defendant's plea to an aggravated felony, but they do not accrue if the defendant pleads guilty to a crime that is not classified for special immigration treatment.  Determining whether a California crime is a federal "aggravated felony" can be complicated because it demands that the state crime be "viewed in the abstract" to determine whether it is a "categorical match" for a federal offense "that serves as a point of comparison." (*Moncrieffe, supra*, 569 U.S. at p. 190; *Torres v. Lynch* (2016) 136 S. Ct. 1619, 1623 [describing list of federal crimes that serve as points of

---

[2]  Any deportation may occur only upon order of the Attorney General (8 U.S.C. § 1227, subd. (a)), so when "mandatory" is used in this context, it means that there is virtually no defense to deportation if the Attorney General chooses to institute proceedings.  Also, there are other categories of crimes in addition to aggravated felonies with mandatory deportation consequences, including so called "crimes of moral turpitude."  (8 U.S.C § 1227, subd. (a)(2)(A)(i).)

comparison].)  A large body of federal case law, however, identifies which California

crimes constitute aggravated felonies and which do not.

A decade ago, the United States Supreme Court recognized the significance of the

consequences of a defendant's plea to a crime, such as an aggravated felony, by which he

forfeits all defenses to deportation.  *Padilla v. Kentucky* (2010) 559 U.S. 356, 360 held

that the Sixth Amendment's guarantee of effective counsel requires lawyers to advise

their clients if a guilty plea would make them "subject to automatic deportation."  The

court recognized that immigration law had changed over the years such that "deportation

is an integral part—indeed, sometimes the most important part—of the penalty that may

be imposed on noncitizen defendants."  (*Padilla v. Kentucky* at p. 364, fn. omitted.)

Where a defendant faced deportation as a "presumptively mandatory" consequence of his

plea (*id.* at p. 357) the court held that his counsel was ineffective in failing to advise him

of that risk (*id*. at p. 374).  The court noted that an informed counsel could work toward

"avoiding a conviction for an offense that automatically triggers the removal

consequence."  (*Id*. at p. 373.)

Our Legislature has codified *Padilla*'s holding in our statutory law.  Effective

January 1, 2016, the Legislature enacted section 1016.2 as a part of legislation intended

"to codify *Padilla v. Kentucky* and related California case law and to encourage the

growth of such case law in furtherance of justice and the findings and declarations of this

section."  (§ 1016.2, subd. (h).)  Among other things, the Legislature declared that with

"an accurate understanding of immigration consequences, many noncitizen defendants

are able to plead to a conviction and sentence that satisfy the prosecution and court, but that have no, or fewer, adverse immigration consequences than the original charge." (§ 1016, subd. (d); see also *People v. Patterson* (2017) 2 Cal.5th 885, 890-891 [explanation from immigration lawyer that informed counsel would seek, instead of a plea that carried a mandatory deportation consequence, an "'immigration neutral'" plea that would give the court and the prosecution "'equivalent convictions and sentences'"].)

Effective a year later, the Legislature enacted section 1473.7, which allowed out-of-custody defendants to file a motion to vacate their conviction because it was "legally invalid due to prejudicial error damaging the [defendant's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd (a)(1).)

For the first two years that section 1473.7 was in effect, California courts "uniformly assumed" that a defendant challenging a conviction under the section must meet the constitutional standards for demonstrating ineffective assistance of counsel. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.) That meant showing that counsel's performance fell below an objective standard of reasonableness based on norms prevailing at the time of the plea. (*Ibid.*)

Effective January 1, 2019, however, the Legislature amended section 1473.7 to "provide clarification to the courts." (Stats. 2018, ch. 825, § 1, subd. (b).) It stated that section 1473.7 "shall be interpreted in the interests of justice and consistent with the

4

findings and declarations made in Section 1016.2 of the Penal Code." (Stats. 2018, ch. 825, § 1, subd. (c).) Thus, the Legislature intended section 1473.7 to be interpreted with reference to its codification of *Padilla* and the Legislature's related findings in section 1016.2. The legislature clarified that "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).) Rather, "the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (e)(4).)

## II

## DISCUSSION

In 1997, defendant pled guilty to one crime that was a federal aggravated felony and one that was not. His conviction on a violation of section 273.5 (domestic violence) is classified as an aggravated felony under federal immigration law (*United States v. Mata-Jimenez* (9th Cir. 2019) 749 Fed. Appx. 664, 665), so it renders him subject to mandatory deportation and ineligible for discretionary relief. On the other hand, his conviction on section 273a (child cruelty) is not an aggravated felony (*Ramirez v. Lynch* (9th Cir. 2016) 810 F.3d 1127, 1138), and it alone would not make deportation mandatory.

Defendant was given the standard section 1016.5 advisement on a pre-printed advisement of rights form that contained a list of about a dozen rights and consequences of a conviction, written in a manner that applies generically to any criminal defendant. The form advised him that if he is not a citizen of the United States, his conviction "may" result in deportation.

In today's appeal, defendant claims that relief is warranted under section 1473.7 because he was not properly informed of the mandatory immigration consequences of his section 273.5 plea, and that he would have acted differently had he known.[3]

Cognizant of the legal background presented in section I above, I will discuss four areas of analysis where I differ from the majority opinion.

A.     Standard of Review

The standard of review on the appeal from an order on a section 1473.7 motion is unsettled following the Legislature's 2019 amendments to that section. I think the better view is that those amendments do not alter the standard of review that existed before them, by which an appellate court independently reviews the trial court's ruling, rather than defers to it. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1132-1133 [applying independent review in section 1473.7 appeal].)

---

[3] It is unclear why the majority states that "much of [defendant's] focus is on his section 1016.5 argument." (Maj. opn., *ante*, at p. 13.) Defendant's brief contains a substantive section arguing for relief under section 1473.7. Defendant frames his request for relief here by invoking both statutes, requesting that we "grant his Motion to Vacate Per PC Sections 1016.5 and/or 1473.7, or in the alternative, remand directing the Trial Court to grant his Motion." If defendant were to continue to assert the terms of section 1016.5 were violated as he initially did in trial court, that claim would be frivolous, as the evidence demonstrates that he was properly advised pursuant to that section.

Prior to the 2019 amendments, courts viewed section 1473.7 relief as requiring a showing of a deprivation of the Sixth Amendment right to counsel, so appellate review was independent because it involved a constitutional right and thus a mixed question of fact and law. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76.) The amendments to section 1473.7 eliminated that showing as a strict requirement but did not fundamentally change the type of appellate analysis involved. Rather, the Legislature indicated that section 1473.7 should be interpreted to apply the codified right based on *Padilla*, along with the legislative findings. (Stats. 2018, ch. 825, § 1, subd. (c).) A showing of ineffective assistance of counsel still can establish a section 1473.7 violation, yet similarly prejudicial assistance that was not quite ineffective assistance of counsel as normally defined—for example, assistance that was inadequate in retrospect, after *Padilla*, but not below the norm for attorneys at the time of the plea—also could mean a defendant is entitled to relief.

The majority's choice to adopt an abuse of discretion standard (maj. opn., *ante*, at pp. 7-8) is defensible in theory. In my view, however, it is incongruous to have a court review independently a defendant's section 1473.7 argument predicated on ineffective assistance of counsel, and then switch to deferential review for a backup argument that the same assistance was legally invalid under similar, but statutory, standards. (Under any standard, of course, we defer to a trial court's credibility findings, if any.) It seems to me that if we are to independently review a section 1473.7 motion where it raises constitutional violations, we also should be charged with independent review of legal

7

invalidity under the clarified section 1473.7 standard, which is a similar mixed-fact-and-law analysis of the codified *Padilla* right (that is itself an application of the constitutional right to counsel).

B.    Retroactivity

I am unaware of any authority that suggests that section 1473.7 cannot apply to past convictions; on its face, its *only* application is to allow a person to seek to vacate a past conviction by guilty plea.  (§ 1473.7, subd. (a)(1).)

The majority nevertheless presents as a serious question whether the "new right" in section 1473.7 "should be applied retroactively to plea bargain cases."  (Maj. opn., *ante*, at pp. 13-15 [italics omitted].)  After suggesting that retroactivity—an issue not raised by the parties—"remains unclear," the majority concludes that it need not decide it, since defendant's appeal lacks merit anyway.  (*Id.* at pp. 14-15.)

The majority here cannot be referring to the familiar arguments in many California cases about the retroactivity of statutes.  Cases commonly must address whether a provision that is silent as to its retroactive effect should be applied to past adjudications.  Here, however, there is no question that section 1473.7 is intended to apply to past convictions; that is all it does.  There is no interpretive issue in this regard.

Instead, the majority apparently labels as "retroactivity" an argument that is considerably more eccentric:  a claim that the Legislature lacks the power to affect prior convictions.  It may be difficult to find support for this position, but if the majority wishes to *sua sponte* suggest the idea, it ought not be so artful.  It should be clear about

8

exactly what it deems an open question and identify some authority that might conceivably support the view.

The main case that the majority cites, *People v. Ruiz* (2020) 49 Cal.App.5th 1061, correctly applies section 1473.7 to permit a defendant to challenge an old conviction where she was not informed that the conviction made her deportation mandatory. The majority relies on the dissent in that case, which lacks the force of law and, at least in part, stated that it simply does not like what the Legislature did by enacting section 1473.7. (*People v. Ruiz, supra*, at p. 1071 [Yegan, J., dissenting] ["The sanctity of a 30-year-old superior court final judgment should not be sacrificed. . . . The Legislature should not alter the timeliness rule."].)

The majority's misleading characterization of its discussion of an open issue of "retroactivity" is concerning, as the discussion suggests, without quite deciding, an unsupported, novel claim about the limits of legislative authority that was not raised by any party and that, even in the majority's analysis, has no bearing on the disposition of this appeal. In my view, the majority's discussion of "retroactivity" is simply wrong.

C.     The Error in Advisement

Section 1473.7 "allows a noncitizen defendant to vacate a guilty plea if he or she 'did not understand the true implications of the plea deal before accepting it and where the defendant suffered prejudice. The key to the statute is the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken, and not whether their attorney technically provided [ineffective assistance of counsel].'"

9

(*People v. Mejia* (2019) 36 Cal.App.5th 859, 865-866.)[4] Defendant here attempted to satisfy this requirement by means of a declaration that asserted that he did not understand the mandatory deportation consequences of his aggravated felony plea. He asserted that he was never told about "the significant immigration complications that [he is] now facing as a result of this plea." He stated that he was not informed that he would face denial of lawful permanent residence status nor told that he could be deported at any time.

When defendant pled guilty to a violation of section 273.5, he admitted a federal aggravated felony that carried the consequence of mandatory deportation. The advisement on his plea form, however, was much more equivocal. He was told through the generic advisement-of-rights form that if he was not a citizen of the United States, his conviction "may" subject him to deportation. As our Supreme Court recognized, this advisement is not adequate. (*People v. Patterson*, *supra*, 2 Cal.5th at pp. 895-896 ["the standard section 1016.5 advisement that a criminal conviction 'may' have adverse immigration consequences 'cannot be taken as placing [the defendant] on notice that, owing to his particular circumstances, he faces an actual risk of suffering such.'"]; see § 1016.2, subd. (d), (e); *INS v. St. Cyr* (2001) 533 U.S. 289, 325 [for noncitizens, "[t]here is a clear difference . . . between facing possible deportation and facing certain deportation"].) As our Supreme Court put it in describing a lawyer's duty: "a criminal

---

[4] *Mejia* frames the issue correctly, and the majority is imprecise in defining the issue here as whether the "plea agreement was . . . entered into willingly, intelligently, and voluntarily, to justify vacating the judgment" (maj. opn., *ante*, at p. 2); and whether "his guilty pleas were not voluntary, knowing nor intelligent" (maj. opn., ante, at p. 8).

10

defense attorney must accurately advise his or her client of that [mandatory deportation] consequence before the client enters a guilty plea. [Citation.] The generic advisement under section 1016.5 is not designed, nor does it operate, as a substitute for such advice." (*People v. Patterson*, *supra*, 2 Cal.5th at p. 898.)

In this regard, the trial court erred in its reasoning. The court denied defendant's section 1473.7 claim solely because defendant had initialed the advisement on the advisement form. (Maj. opn, *supra*, at p. 10.) Thus, the trial court found that a section 1016.5 advisement that defendant "may" be subject to deportation sufficed, even though defendant faced not just the possibility of deportation, but mandatory deportation. The People do not defend this reasoning on appeal, and they do not argue that there was no error defendant's advisement at the time of the plea. Instead, the People simply argue that any error was not prejudicial.

The majority opinion, however, fails to acknowledge the trial court's error. The majority also does not acknowledge that the People have advanced no argument that defendant was adequately advised. Instead, the opinion relegates to a footnote the established principle that a "may" advisement is not adequate for those facing mandatory deportation. (Maj. opn., *ante*, at p. 11, fn. 6.) The footnote then asserts that defendant has not "met the standard to support a claim that he was not so advised," asserting that this will be discussed later. (*Ibid*.) What the majority concludes on the matter later seems to be this: "the trial court did not abuse its discretion in discrediting defendant's

11

declaration . . . in the face of the sole contemporaneous evidence—his initials and signature on the plea forms—that he did understand." (*Id*. at p. 20.)

There are at least four problems with the majority's reasoning here. One is that the trial court never determined that defendant was advised of the mandatory deportation consequences of his plea. It only found (erroneously) that the advisement on the plea form was adequate to advise him. As to whether defendant was advised—beyond section 1016.5—that his guilty plea carried mandatory deportation consequences, there is no finding by the trial court to defer to, even assuming deferential review is the correct standard (as discussed above, I do not believe it is).

A second problem is the trial court did not generally "discredit[]" defendant's declaration, as the majority puts it. The trial court found that defendant was in fact informed of the immigration consequences of his guilty plea, based solely on the advisement form. But the trial court did not even mention defendant's declaration in its brief ruling, quoted entirely by the majority. (Maj. opn., *ante*, at p. 10.) There is no reason for us to conclude that the trial court "found defendant's declaration not credible" (maj. opn., *ante*, at p. 13; accord, *id*. at p. 18), rather than simply finding defendant was wrong about whether he had been given a section 1016.5 admonition.

Third, even if a defendant wrongly declared—long after his guilty plea—that he not had been given the section 1016.5 admonition through the advisement form, I do not believe that alone, without more, would be an appropriate basis for discarding his declaration in its entirety as uncredible. Such a mistake could equally well be a lack of

12

memory of the detailed advisements, rather than a false statement that would call into question the rest of the declaration.

Fourth, even before a written copy of his plea agreement was located, defendant in fact acknowledged that he was given a written advisement of immigration consequences, rather than denying it as the majority intimates. Defendant in his declaration stated that nobody at the hearing "issued or explained the PC § 1016.5 admonition. None of the attorneys instructed the interpreter to explain any of these consequences to me in Spanish. *He did not explain the clause in the written plea, presented in English and in legal terminology, that was meant to inform me of these consequences*." (Italics added.) Thus, even before the plea agreement was located—and apparently relying on his memory of proceedings two decades earlier—defendant declared that he *had* been given a written advisement of immigration consequences, simply asserting that the English was not explained to him at the hearing or otherwise. In my view, this acknowledgment that there was a written immigration advisement, even absent proof of it, is at least somewhat to defendant's credit. Once the plea form was found, counsel represented that defendant did not remember the form, but acknowledged that his initials were on it. (Maj. opn., *ante*, at p. 6.) These events do not warrant the characterization that the majority gives them. (See, e.g., maj. opn., *ante*, at p. 12 ["defendant reversed his declaration attestation and admitted he had been admonished"].)

13

In my view, defendant's declaration not only supports but, in the absence of any contrary evidence, compels the conclusion that he was not advised that his section 273.5 guilty plea required mandatory deportation as a consequence. The People have not contested the matter, the trial court made no finding on the matter, and the majority offers only misplaced deference to the trial court. A defendant establishes error under the terms of section 1473.7 if he shows that he did not meaningfully understand, defend against, or knowingly accept the "mandatory immigration consequences of his guilty plea." (*People v. Mejia*, *supra*, 36 Cal.App.5th at p. 873.) Defendant was provided a section 1016.5 advisement, but there is no indication on the form, or any other evidence, that the advisement was supplemented to make it complete. It is therefore essentially uncontested that defendant did not meaningfully understand the mandatory immigration consequences of his section 273.5 plea in 1997. The majority is incorrect to conclude that defendant's showing on the issue was inadequate.

D.     Prejudice

To receive relief under section 1473.7, is not enough for a defendant to show that he did not understand the mandatory deportation consequences of the charge to which he pled guilty. He must convince the trial court that it is "reasonably probable" that "if properly advised, [he or she] would have rejected an existing plea offer in the hope or expectation that he or she might thereby negotiate a different bargain, or, failing in that, go to trial." (*People v. Martinez* (2013) 57 Cal.4th 555, 569, 567 [standard for section 1016.5].)

14

This prejudice determination is difficult both for attorneys and courts because it is counterfactual.  If, in this case, defendant had understood that a plea to section 273.5 mandates deportation, what would he have done?  That may depend on, as our Supreme Court has indicated, "the presence or absence of other plea offers, the seriousness of the charges in relation to the plea bargain, the defendant's criminal record, the defendant's priorities in plea bargaining, the defendant's aversion to immigration consequences, and whether the defendant had reason to believe that the charges would allow an immigration-neutral bargain that a court would accept."  (*Martinez*, supra, 57 Cal.4th at p. 568.)

The majority's repeated emphasis on the need for "contemporaneous evidence" could be misleading to the extent it implies a need to exhume evidence that existed at the time of the plea.  There may be no such evidence where the inquiry is counterfactual.  Rather, to evaluate prejudice a court needs evidence *about* the defendant, prosecution, and case at the time of the plea.

It would be significant if we could determine that the parties likely could have agreed to an immigration-neutral plea; that is, one that did not carry mandatory deportation as a consequence.  (See § 1016.2(d) [with an accurate understanding of immigration consequences, a defendant may be able to reach a plea that will satisfy the prosecution but with fewer immigration consequences].)  In this case, defendant has an advantage in framing a section 1473.7 motion in that regard:  he already pled to a felony that is "immigration neutral," his section 273a child cruelty conviction.  Our record

15

indicates that defendant received on that count an identical sentence to what he received for his section 273.5 conviction: two years imprisonment that was suspended in favor of a single 36-month probation term, with particular conditions.

Thus, to demonstrate prejudice due to the possibility of an immigration-neutral plea disposition, defendant might have addressed such questions as the following. How would the prosecution have responded if, at the time of the plea, defendant had offered to plead to section 273a only, with the same total sentence that he received in this case? What about two counts of 273a with that sentence? What about a plea to felony spousal battery in violation of section 243, subdivision (e), instead of his section 273.5 plea?[5] What if he had offered to plead to any of these charges, communicating that he would go to trial on section 273.5 only? Could he have avoided mandatory deportation in this way?

Defendant did not introduce evidence that bore on such questions in trial court. Doing so might, for example, involve developing evidence about the pleading practices at the time from the prosecutor or defense attorney who handled the case or, instead, contemporaries of theirs. Instead, defendant simply asserted in his declaration that his attorney did not "explore any immigration neutral charges," though it is not even clear how defendant would know that. On this dimension of the prejudice

---

[5] California battery convictions appear to not require mandatory deportation under federal immigration law. (See *Ortega-Mendez v. Gonzalez* (9th Cir. 2006) 450 F.3d 1010, 1012 fn.1, 1016-1017.)

16

determination, we have no evidence as to whether an alternative plea disposition was reasonably probable.

Moreover, defendant's declaration emphasizes that his priority at the time was to get out of jail as quickly as possible to return to his job and support his family. Although defendant has *argued* generally that such considerations would have been outweighed by understanding the immigration consequences of his conviction, his declaration does not expressly discuss how the costs of rejecting the plea—the potential sentence he faced, his ability or lack thereof to make alternative arrangements for his family, and so on—would have factored into his analysis. In my view, to make the required showing, a defendant needs not only to recite the benefits of the rejecting the plea offer, but also to grapple with the potential costs of doing so. (See *Martinez, supra*, 57 Cal.4th at p. 568.) A court would need to evaluate the credibility of that sort of testimony to make the difficult counterfactual determination a section 1473.7 motion presents.

To determine that it is reasonably probable that defendant would have rejected the plea offer, a court would need to consider not only defendant's ties to the United States and his family situation, but to consider them in light of the consequences of his rejecting the plea and proceeding to trial. Without evidence of the probability of an alternate disposition, and without evidence of both the negative and positive consequences of the plea and how the defendant would have weighed them, a defendant cannot support a showing that it is reasonably probable that, if properly advised, he would have rejected the section 273.5 plea offer "in the hope or expectation that he or she might thereby

17

negotiate a different bargain, or, failing in that, go to trial." (*Martinez*, *supra*, 57 Cal.4th at p. 567.)

On the record we have, defendant has shown error, but not prejudicial error.

RAPHAEL_____
                              J.